# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DE ANGELIS, | : |
| | : |
|     Plaintiff, | : |
| | :   Case No.   2:17-CV-927 |
|     v. | : |
| | :   JUDGE ALGENON L. MARBLEY |
| ICON ENTERTAINMENT GROUP | : |
| INC. d/b/a KAHOOTS | :   Magistrate Judge Deavers |
| GENTLEMEN'S CLUB, *et al.*, | : |
| | : |
|     Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Defendants' Motion to Dismiss or Stay in Favor of Arbitration and for Attorneys' Fees and Costs. (ECF No. 28). Plaintiff Stephanie De Angelis filed a Response (ECF No. 34) and Defendants filed a Reply (ECF No. 39). For the reasons stated below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

ICON Entertainment Group Inc. operates Kahoots Gentlemen's Club ("Kahoots" or "Club"), an adult entertainment club in Columbus, Ohio. Stephanie De Angelis has brought suit against ICON, its individual owners, and 4522 Kenny Road, LLC, an Ohio Limited Liability Company sharing its principal place of business with Kahoots. (ECF No. 10 at 5). Ms. De Angelis alleges that she performed at Kahoots as a dancer from April 2016 to February 2017. (ECF No. 10 at ¶¶ 30, 32). Ms. De Angelis alleges that Kahoots did not pay its dancers any wages. (*Id.* at ¶ 1). She avers that, instead, Kahoots misclassified all of its dancers as independent contractors, rather than employees, and that the dancers are only compensated through tips from customers. (*Id.* at ¶¶ 31, 35). She further alleges that at the end of each night,

1

Kahoots took a cut from all tips made by the dancers, and the dancers were required to divide their tips with other employees. (*Id.* at ¶¶ 43–44).

Ms. De Angelis signed an agreement titled "Dancer Performance Lease" (the "Agreement") with ICON Entertainment on June 2, 2016. (ECF No. 28-1). The Agreement purported to disclaim any employer-employee relationship between ICON or Kahoots and Ms. De Angelis and instead classify Ms. De Angelis as a performer leasing performance space from Kahoots. (*Id.*). The Agreement contains a provision titled "Mandatory Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Costs" which reads in relevant part:

> EXCEPT FOR ANY ADMINISTRATIVE PROCEEDINGS THAT ARE NOT LEGALLY BARRED BY THIS PARAGRAPH, ANY CONTROVERSY, DISPUTE, OR CLAIM (IN THIS PARAGRAPH 21, COLLECTIVELY "CLAIM") ARISING OUT OF THIS LEASE OR OUT OF ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PURSUANT TO THE FEDERAL ARBITRATION ACT (THE "FAA"). SUCH ARBITRATION SHALL OCCUR IN THE STATE OF NEW YORK, AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21, ANY RELIEF AVAILABLE IN A COURT. THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR. EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY</u>. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. <u>THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA</u>. THE COSTS OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS

> REQUIRED BY LAW. THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

(*Id.* at 5–6, ¶ 21A) (emphasis in original). The Agreement further provides that if "**ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.**" (*Id.* at 6, ¶ 21C) (emphasis in original).

Ms. De Angelis filed this lawsuit as a collective and class action against Defendants on October 23, 2017, and filed her First Amended Complaint on January 18, 2018. (ECF Nos. 1, 10). She alleges violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, et seq., the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, et seq., the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, and common law unjust enrichment for failing to pay dancers minimum wage for all hours worked, including failure to pay overtime. (ECF No. 10). Defendants filed their Motion to Dismiss or Stay in Favor of Arbitration and for Attorneys' Fees and Costs on June 6, 2018. (ECF No. 28). This Motion is fully briefed and ripe for review.

## II. LAW & ANALYSIS

### A. The Arbitration Agreement

Arbitration "is a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be

3

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4 (2012). The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). The court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In determining whether the parties agreed to arbitrate under the first prong of the Stout test, the Court must apply state law of contract formation. *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, No. 2:14-CV-2251, 2015 WL 5162522, at *3 (S.D. Ohio Sept. 3, 2015). *See also Ackison Surveying, LLC*, 2016 WL 4208145, at *1 (Marbley, J.) ("Whether the parties' contract evinces an agreement to arbitrate is governed by principles of state contract law."). Thus, "state-

4

law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The parties agree that Ohio law applies.

Where the contract includes a delegation provision, however, the analysis changes. A delegation provision is an "agreement[] to arbitrate threshold issues concerning the arbitration agreement." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 395-96 (6th Cir. 2017) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Parties can agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69. In *Rent-A-Center*, the Supreme Court explained that such a delegation provision is "simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Thus, a delegation provision is severable from the remainder of the contract, and "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate"—here, the delegation provision. *Id.* In other words, when there is a delegation provision, the Court will only intervene if the party seeking to avoid arbitration challenges the delegation provision itself. *Id.* at 71-72.

Kahoots argues that Ms. De Angelis's claims are subject to arbitration and that any threshold questions about the validity of the arbitration agreement must themselves be submitted to an arbitrator under the Agreement's delegation provision. The Agreement's delegation provision reads as follows: "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE**

5

**ARBITRATION PROVISIONS.**" (ECF No. 28-1 at 4, ¶ 21A). Ms. De Angelis argues that the delegation clause is not clear and unmistakable. Additionally, Ms. De Angelis argues that the arbitration clause does not cover the dispute at issue.

The Plaintiff challenges the contract as follows: (1) the delegation clause is not clear and unmistakable; (2) the arbitration agreement prevents the Plaintiff from effectively vindicating her rights; (3) the arbitration agreement is void for lack of mutual assent; (4) the claims alleged here "are outside the scope of the arbitration agreement"; (5) non signatories to the agreement cannot enforce the arbitration clause; (6) the arbitration agreement fails for lack of consideration; (7) the arbitration agreement is an attempt at impermissible waiver of rights under the FLSA and the Ohio Constitution; (8) leases cannot support agreements to arbitrate under Ohio law; (9) "the provisions seeking costs are invalid and illegal"; and (10) the arbitration agreement is void as unconscionable. (ECF No. 34 at 2).

In addition to challenging the arbitration agreement, Ms. De Angelis has argued that this Court cannot dismiss Defendants because they are jointly and severally liable as co-conspirators in *Doe 1, et al. v. VM3015 Inc., et al.*, Case No. 2:18-cv-443 (S.D. Ohio 2018) and that this Court should rule on conditional certification prior to ruling on Defendants' instant motion. This Court rejects both arguments. As this Court previously ruled in *De Angelis v. Nolan Enterprises, Inc.*, Case No. 2:17-cv-926 (S.D. Ohio 2017), Ms. De Angelis has offered no cases to support her argument that Kahoots's alleged role in an entirely different case should inform the determination of the validity and applicability of the arbitration agreement. This is particularly true where, as here, the Defendants in the *VM3015* litigation are not defendants here. As to conditional certification, this Court previously held that it would consider dispositive motions before addressing conditional class certification in the interests of efficiency and judicial

economy. See *De Angelis v. Nolan Enterprises, Inc.*, Case No. 2:17-cv-926 (S.D. Ohio 2017) (ECF No. 55 at 4 n.1).

### B. Challenges to the Delegation Clause

Only two of Ms. De Angelis's arguments are specific to the delegation clause: first, that Defendants have not specifically identified a delegation clause in the Agreement, and second, that the delegation clause is not clear and unmistakable. The Defendants have specifically identified a delegation clause. They have pointed to Paragraph 21(A) of the Agreement, which states in relevant part: "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.**" (ECF No. 28 at 8).

Second, Ms. De Angelis alleges that this delegation provision is not a clear and unmistakable delegation of questions of arbitrability. Plaintiff is incorrect. The delegation provision in the Agreement between Plaintiff and Kahoots is similar to the provision that the Supreme Court found clear and unmistakable in *Rent-A-Center*. There, the provision read, "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Rent-A-Center*, 561 U.S. at 66. Other courts have also found provisions similar to the one at issue here to be sufficiently clear delegations. *See, e.g.*, *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394 (6th Cir. 2017) (unpublished) ("[a]ll claims relating to your account, a prior related account, or our relationship are subject to arbitration, *including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration*

7

*provision*," and "Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement."); *Doe v. Déjà vu Consulting Inc.*, Case No. 3:17-cv-00040, 2017 U.S. Dist. LEXIS 142019, at *41–42 (M.D. Tenn. Sept. 1, 2017) ("the arbitrator shall have exclusive authority to resolve any disputes over the interpretation, validity and/or enforceability of any part of this contract, including the arbitration provisions in this paragraph."). The delegation provision here is thus clear and unmistakable.

### C. Challenges Regarding the Scope and Enforceability of the Arbitration Agreement

Once there is a delegation clause, "a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). The delegation clause here states: "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITY AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.**" (ECF No. 28 at 8). Thus, Ms. De Angelis must arbitrate any challenges to the validity or enforceability of the arbitration clause. Ms. De Angelis has challenged the application of the arbitration agreement to her state constitutional claims, argued that the arbitration agreement makes her unable effectively to vindicate her rights, raised several challenges to the arbitration agreement based on contract law, and challenged the applicability of the arbitration agreement to nonsignatories. These challenges pertain to the enforceability or validity of the arbitration agreement, and therefore, these challenges must be arbitrated.

Plaintiff argues that her Ohio minimum wage claims are based on the Ohio Constitution and that the arbitration agreement does not cover state constitutional claims. (ECF No. 34 at 19). This challenge pertains to whether the arbitration agreement is enforceable as to the Ohio minimum wage claims.

Plaintiff argues that despite the delegation clause, this Court must also consider Plaintiff's effective vindication challenge to the arbitration agreement. The effective vindication doctrine voids "arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 437 U.S. 614, 637 n.19 (1985)). Effective vindication could be frustrated by "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* at 236. The "party [who] seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). The effective vindication doctrine, if applicable, would operate to exempt from arbitration only federal statutory claims, not state law claims. *Prasad v. General Elec. Co.*, No. 2:13-CV-272, 2014 WL 934577, at *3 (S.D. Ohio Mar. 10, 2014).

Several courts have considered effective vindication arguments even when arbitration agreements include delegation clauses. *See, e.g.*, *Doe*, 2017 U.S. Dist. LEXIS 142019 at *46–47 (analyzing effective vindication challenge where parties' agreement included delegation clause); *Mantooth v. Bavaria Inn Rest., Inc.*, Civil Action No. 17-cv-1150-WJM-MEH, 2018 U.S. Dist. LEXIS 82480 (D. Colo. May 16, 2018) (same); *Congdon v. Uber Techs.*, 226 F. Supp. 3d 983 (N.D. Cal. 2016) (same). Those courts were deciding the issue, however, before the Supreme

Court's pronouncement in *Henry Schein, Inc. v. Archer & White Sales, Inc*. An effective vindication challenge is a challenge to the enforceability of the arbitration agreement. After *Henry Schein, Inc. v. Archer & White Sales, Inc*, these challenges are heard by the arbitrator where, as here, the parties' agreement includes a delegation clause. Ms. De Angelis's effective vindication challenge must, therefore, be raised before the arbitrator in the first instance.

      Ms. De Angelis's additional contract challenges are for the arbitrator to decide. When there is a delegation clause, challenges to the overall contract or to the arbitration agreement do not pertain to the validity of the delegation clause and must be submitted to arbitration. *Rent-A-Center, W.*, 561 U.S. at 71–72. Ms. De Angelis's challenges based on mutual assent, lack of consideration, and unconscionability relate to the arbitration agreement, not to the delegation clause. Nowhere in Plaintiff's briefing of those issues does she even mention the delegation clause. Ms. De Angelis also argues that the arbitration agreement is impermissible under the FLSA, the Ohio Constitution, and the Ohio statute prohibiting arbitration of "controversies involving the title to or the possession of real estate." These challenges are all challenges to the enforceability of the arbitration clause and therefore fall within the delegation clause of the arbitration agreement. Thus, these challenges are for the arbitrator.

      Plaintiff has also argued that nonsignatories to the Agreement cannot be bound by the arbitration clause. Whether such a challenge must be decided by the Court or an arbitrator is a closer question. Some courts have found that a delegation clause does not clearly and unmistakably show that Plaintiffs agreed to arbitrate arbitrability with nonparties. *See, e.g.*, *Republic of Iraq v. BNP Paribas USA,* 472 F. App'x 11, 13 (2d Cir. 2012) (unpublished) ("But evidence of intent to have an arbitrator determine its jurisdiction with regard to disputes 'referred by either Party,' does not clearly and unmistakably demonstrate their intent to have the arbitrator

10

determine its jurisdiction with respect to any dispute raised by a non-party.") (internal citations omitted); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable."). *But see Brittania-U Nig., Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714–15 (5th Cir. 2017) (holding that the district court did not err in allowing nonsignatories to enforce the arbitration clause because the clause clearly bound the signatory attempting to avoid arbitration); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005) (finding that the arbitration and delegation clauses bound the signatory to arbitration with a nonsignatory); *Apollo Computer v. Berg*, 886 F.2d 469 (1st Cir. 1989) (affirming district court order allowing arbitration between signatory Plaintiff and a nonsignatory Defendant purportedly assigned rights to arbitration from the original signatory).

There is somewhat of a logical conundrum in finding that Ms. De Angelis must arbitrate the question of whether she agreed to arbitrate against nonsignatories. There is generally a presumption *against* delegation that may be overcome only with clear and unmistakable evidence; silence or ambiguity is not enough. *First Options of Chicago, Inc.*, 514 U.S. at 944–45. Even with a delegation clause, courts must determine whether a contract exists at all. *See Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 507 (6th Cir. 2011) (citing *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) for the proposition that "a *prima facie* agreement to arbitrate" must exist prior to applying a delegation clause). If the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them. *See., e.g.*, *Morsey Constructors, LLC v. Burns & Roe Enters.*, CASE NO. 5:08-CV-23-R, 2008 U.S. Dist. LEXIS 61847, at *17–20 (W.D. Ky. Aug. 12, 2008) (examining whether a nonsignatory was bound by

11

arbitration clause by principles of estoppel even where delegation clause was present); *Electrolux Home Prods. v. Mid-South Elecs., Inc.*, CIVIL ACTION NO. 6:07-CV-016-KKC, 2008 U.S. Dist. LEXIS 61416, at *18–19 (E.D. Ky. Aug. 11, 2008) (examining whether nonsignatory is bound by arbitration clause under state law); *Doe v. Déjà vu Consulting Inc.*, 2017 U.S. Dist. LEXIS 142019 (M.D. Tenn. Sept. 1, 2017) (applying estoppel analysis to require signatory to arbitrate against nonsignatory).

But to adjudicate whether Ms. De Angelis is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc.*  There, the Court opined that once the parties have a delegation clause, "a court possesses *no power* to decide the arbitrability issue," *Henry Schein, Inc.*, 139 S. Ct. at 529 (emphasis added), and that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530.  Whether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant.  *But see Berkeley Cty. Sc. Dist. v. HUB Int'l Ltd.*, No. 2:18-cv-00151-DCN, 2019 U.S. Dist. LEXIS 13692, at *24 n.7 (D. S.C. Jan. 29, 2019) (finding that *Henry Schein, Inc. v. Archer & White Sales, Inc.* does not prohibit the court from examining whether parties formed an agreement to arbitrate at all).  The parties agreed to delegate such questions to an arbitrator.

Defendants have asked this Court to compel arbitration.  The parties have provided for arbitration in New York, but this Court has jurisdiction to compel arbitration only within this district.  *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003).  Instead, the Court must either dismiss the case or stay the case pending arbitration.  *See Milan*

*Express Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 486 (6th Cir. 2014) (unpublished). The FAA authorizes a stay of proceedings, upon application by a party, when at least one claim is subject to arbitration. 9 U.S.C. § 3; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. at 68. But dismissal is proper where "all claims are referred to arbitration." *Hensel v. Cargill, Inc.*, 1999 U.S. App. LEXIS 26600 (6th Cir. Oct. 19, 1999) (table) (citing *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). This Court has stayed proceedings in a similar situation in which it found the claims subject to arbitration but was without jurisdiction to compel arbitration in the forum for which the parties contracted. *Tower v. Amazon, Inc.*, Case No. 15-cv-2405, 2016 U.S. Dist. LEXIS 109924, at *15 (S.D. Ohio Aug. 18, 2016) (Marbley, J). This Court will follow that approach here. The case is hereby **STAYED** pending arbitration. The parties are to notify the Court when arbitration has been completed and may either file additional motions or notify the Court that the case may be dismissed.

### D. Fees and Costs for Enforcing Arbitration

Defendants have also moved for attorneys' fees and costs for their efforts to compel arbitration. The Agreement between Plaintiff and Defendants provides that "**IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.**" (28-1 at 6, ¶ 21C) (emphasis in original). Defendants argue that this provision entitles them to fees associated with enforcing the

13

arbitration clause.  Plaintiff argues that this provision cannot be enforced because the FLSA does not authorize such fees and attempts to make a second effective vindication argument.  (ECF No. 34 at 30–31).  Defendants have responded that the fees provision here is considered separately from the Plaintiff's FLSA claim.

Although under the "American rule," each party pays its own way in litigation, such arrangement can be preempted by contract, even in the FLSA context.  *See Cook v. All State Home Mortg.*, 329 F. App'x 584, 588–89 (6th Cir. 2009) (unpublished).  The arbitration agreement clearly provides for attorney's fees and costs where, as here, one party must take action to enforce the arbitration agreement.  Such provisions typically are enforceable.  *See, e.g.*, *Cook v. All State Home Mortg., Inc.*, NO. 1:06 CV 1206, 2006 U.S. Dist. LEXIS 54621, at *9–10 (N.D. Ohio Aug. 7, 2006); *Cook*, 329 F. App'x at 589; *Johnson v. Western & Southern Life Co.*, No. 1:13-cv-01659-SEB-DKL, 2014 U.S. Dist. LEXIS 122469, at *14 (S.D. Ind. Sept. 3, 2014).

But to assess fees before the arbitration agreement is found valid would be to put the cart before the horse.  The parties' delegation clause requires that Ms. De Angelis's challenges to the validity of the arbitration agreement be submitted to an arbitrator.  It is possible that the arbitrator would find the arbitration agreement invalid.  While the delegation clause would still have required the parties to resolve such challenges through arbitration, it would make little sense to grant attorney's fees when the validity of the arbitration agreement has yet to be determined.  *Cf. Cook v. All State Home Mortg., Inc.*, 2006 U.S. Dist. LEXIS 69541, at *9 (finding no jurisdiction over to assess previously ordered fees because issue of fees was "inherently bound up with the decision on the validity of the arbitration clause," which was on appeal).  Thus, the Defendants' Motion is **DENIED WITHOUT PREJUDICE** pending the outcome of arbitration.

### III.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Stay in Favor of Arbitration and for Attorneys' Fees and Costs is **GRANTED IN PART and DENIED IN PART.** Finding the Plaintiff's claims to be issues for an arbitrator to decide, this case is hereby **STAYED** pending arbitration. Defendants' Motion for fees is **DENIED WITHOUT PREJUDICE** pending the outcome of arbitration.

**IT IS SO ORDERED.**

      s/Algenon L. Marbley
**ALGENON L. MARBLEY
United States District Court Judge**

**DATED: March 4, 2019**